STATE of Wisconsin, Plaintiff-Respondent,

v.

Charles D. EDWARDSEN, Defendant-Appellant.†

Court of Appeals

*No. 87–2443–CR. Submitted on briefs July 5, 1988.—Decided August 3, 1988.*

(Also reported in 430 N.W.2d 604.)

† Petition to review denied.

On behalf of the defendant-appellant the cause was submitted on the briefs of *Mark Lukoff,* first assistant state public defender.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Donald J. Hanaway,* attorney general and *Christoper G. Wren,* assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J. Defendant appeals from a three-count judgment of conviction: possession of cocaine with intent to deliver, battery to a peace officer, and attempting to disarm a peace officer. He makes four

claims of error. He argues that the prosecution acted vindictively in adding the "attempt to disarm" charge following defendant's successful appeal of the possession and battery convictions. *See State v. Edwardsen*, 135 Wis. 2d 208, 400 N.W.2d 18 (Ct. App. 1986) (hereinafter *Edwardsen I*). He argues that the prosecution cross-examined a defense witness using evidence suppressed in *Edwardsen I*, thereby committing prejudicial error. He argues that the trial court erroneously ruled that a potential defense witness could assert a privilege not to testify, thereby depriving defendant of his right to call witnesses on his own behalf. Finally, he argues that the prosecutor's closing argument violated defendant's constitutional right to remain silent by impermissibly commenting on defendant's failure to testify. We reject all four claims of error and affirm.

Some of the pertinent facts have been previously set out in *Edwardsen I*. Edwardsen was a passenger in Stacy Steber's car when she was stopped for speeding. During the course of the stop, defendant and the constable came to blows and defendant grabbed for the constable's firearm. Defendant and his niece were subsequently arrested, Steber's car was searched, and two ounces of chunky cocaine were found.

While in custody, defendant received assurances that he could make incriminating statements with impunity. The statements made included admissions of defendant's familiarity with a drug dealer. The police gave the information to the district attorney's office in connection with their allegations against Edwardsen.

The sheriff's office requested that the prosecution issue the three charges of which defendant presently stands convicted. However, the prosecution instead

agreed that if defendant waived his preliminary hearing, the state would not charge him with "attempt to disarm." This agreement was kept. Defendant then moved to suppress certain statements and admissions made while in custody. He lost the motion and pled no contest. We reversed in *Edwardsen I,* suppressed the statements, and remanded for a new trial.

After remand, the state added the charge of attempting to disarm a peace officer. The defendant had a preliminary hearing on all three counts and was bound over for trial.

At the trial, defendant appeared pro se with standby counsel. He made his own closing argument, but did not take the stand.

## I. VINDICTIVE PROSECUTION

■
We begin our analysis of this issue by reiterating that the prosecutorial function is quasi-judicial. As such, it encompasses an "almost limitless" discretion to charge or not. *State ex rel. Unnamed Petitioners v. Conners,* 136 Wis. 2d 118, 129, 401 N.W.2d 782, 786 (1987). In general, the prosecuting attorney is answerable to the people of the state and not to the courts or the legislature as to the way in which he exercises the power to prosecute criminals. *State v. Karpinsky,* 92 Wis. 2d 599, 608, 285 N.W.2d 729, 734–35 (1979). Among the electorate's, and therefore the prosecutor's, concerns is the safety of the people from particular perpetrators, and one means of protection is incarceration of criminals. Charging decisions are therefore legitimately based upon, among other things, the penalties available upon conviction. *Kar-*

*pinsky,* 92 Wis. 2d at 610–11, 285 N.W.2d at 736, citing *United States v. Batchelder,* 442 U.S. 114, 125 (1979).

On the other hand, we also recognize the constitutional problems that can arise when a defendant, exercising his legal right to an appeal, obtains a second trial of previously decided issues. Institutional dislike of retrials—rather than legitimate concerns for the public welfare—might subconsciously motivate a vindictive judicial or prosecutorial response to a defendant's exercise of his right to obtain a retrial of a decided question. *United States v. Goodwin,* 457 U.S. 368, 376–77 (1982). Yet to punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort. *Id.* at 372. Therefore, the United States Supreme Court holds that a presumption of vindictiveness attaches to a prosecutor who increases charges when, as in the instant case, the state is pursuing a second conviction for the same course of conduct following a defendant's successful appeal. *Id.* at 376, citing *Blackledge v. Perry,* 417 U.S. 21 (1974). The parties do not dispute that *Blackledge* applies here[1] and that a presumption

---

[1]The Fifth Circuit distinguishes *Blackledge,* which concerned increasing defendant's charges to a felony from a misdemeanor, from cases such as this one where new charges were added stemming from the same spree of activity as the original charges. *United States v. Krezdorn,* 718 F.2d 1360 (5th Cir. 1983). In such a case, the Fifth Circuit places the initial burden on defendant to make out a prima facie case for vindictiveness. We are unpersuaded by its analysis. Where the prosecutor "ups the ante" on defendant after conviction and appeal, we think *Blackledge* and *Goodwin* mandate a presumption of vindictiveness. *See Krezdorn,* 718 F.2d at 1370 (Goldberg, J., *dissenting*). Another rule may well apply to pretrial prosecutorial decisions, but that issue is not before us.

of vindictiveness arises under the facts of this case. The defendant claims that the *Blackledge* presumption is irrebuttable. We disagree.

While the *Blackledge* Court did not spell out a procedure for overcoming the presumption of prosecutorial vindictiveness, such a procedure was clearly contemplated. The Supreme Court wrote: "[T]his would clearly be a different case if the state had shown that it was impossible to proceed on the more serious charge from the outset." *Blackledge,* 417 U.S. at 29 n. 7. The Supreme Court later stated: "[W]e note that the *Blackledge* presumption is rebuttable. The state had ample opportunity below to attempt to rebut it but did not do so. Its only argument has been that *Blackledge* should not apply." *Thigpen v. Roberts,* 468 U.S. 27, 32 n. 6 (1984) (citations omitted). We conclude that the *Blackledge* presumption of vindictiveness is rebuttable. Other courts are in accord. *See, e.g., United States v. Taylor,* 749 F.2d 1511, 1513 (11th Cir. 1985), and cases cited therein.

Although we address for the first time the scope of the *Blackledge* doctrine as it affects Wisconsin cases, we observe that our supreme court has discussed the analogous federal presumption of *judicial* vindictiveness where the trial court increases a defendant's sentence following appeal or successful motion to withdraw a guilty plea. *State v. Stubbendick,* 110 Wis. 2d 693, 329 N.W.2d 399 (1983).[2] The court determined that the federal presumption is consistent with Wisconsin's doctrine of abuse of sentencing discretion. *Id.* at 699, 329 N.W.2d at 402. The court reiterated that failure to state sufficient reasons for any sentence

---

[2]*Stubbendick* court expressly noted that the question of prosecutorial vindictiveness was not before it. *State v. Stubbendick,* 110 Wis. 2d 693, 705 n.3, 329 N.W.2d 399, 405 (1983).

constitutes an abuse of discretion. *Id.* The requirement of reasoned exposition safeguards the defendant from impermissible judicial vindictiveness. *Id.*

As we have noted, the prosecutorial function is quasi-judicial and encompasses a wide latitude in charging decisions. We think it clear that vindictiveness constitutes an abuse of prosecutorial as well as judicial discretion. Therefore, a requirement analogous to that set forth in *Stubbendick* is mandated when the prosecutor increases charges following a successful appeal. The requirement is that the prosecutor give sufficient reasons for the increase on the record.

In this case, the prosecutor did put his reasons on the record. His rationale for adding a charge previously bargained away was the loss of evidence and the possible sentencing consequences of that loss. His explanation was as follows:

> [I]t was determined that the State was seeking a particular disposition of this case. Recognizing Mr. Edwardson's [sic] past criminal record, we thought it would be adequate to convict Mr. Edwardson [sic] on two charges, the possession with intent to deliver and the battery to peace officer [sic]. Since that time, of course, some of our evidence, when we're coming back for retrial, has been suppressed by the Court of Appeals.
>
> The posture of the case now is such that we do not—are not as confident of a possible conviction on Mr. Edwardson [sic] for these two charges because a substantial portion of our evidence has been suppressed.

Edwardsen claims that this is not an adequate reason, but we hold that it is.

In a case cited by the state, the Eleventh Circuit dealt with a similar prosecutorial explanation for new charges following a successful appeal. *Taylor*, 749 F.2d at 1514. In that case, Taylor was convicted of possession with intent to deliver a controlled substance following a bench trial. The court of appeals found the evidence inadequate to support the conviction, holding it sufficient only to support a conviction for simple possession. Taylor no longer faced the fifteen-year exposure that the state had originally anticipated. The state therefore indicted Taylor on new charges resulting from the same "spree of activity" as the original delivery charge. *Id.* at 1513.

As here, the prosecutor in *Taylor* denied a vindictive motive for the new charges, and stated that the decision to indict on new charges was "based primarily on his view of an equitable and appropriate sentence for Taylor's criminal conduct." *Id.* at 1514. Such a sentence had been obtainable on the initial charge alone; it was no longer obtainable after the court of appeals' conclusion that the state had not made an adequate record for proving intent to deliver. The *Taylor* court held:

> Under these circumstances, the district court correctly concluded that the prosecutor's motivation for indicting Taylor on additional charges was to secure a conviction and sentence commensurate with his assessment of Taylor's criminal conduct and not to penalize him for taking an appeal.

*Id.*
█

In our case, the state had similarly shown a primary concern for an "equitable and appropriate" punishment for Edwardsen. Edwardsen's criminal

record was lengthy and had been considered when the charging decisions were made. When abundant, persuasive evidence virtually assured significant exposure to incarceration, the state was willing to forego a third conviction on the defendant's record. When the evidence was suppressed, the state lost the unparalleled significance and persuasive effect that a confession can have on the presentation of a case. Ammunition for obtaining a punishment suiting the state's view of the defendant and his conduct was thus significantly depleted. The state therefore added a charge, thereby replenishing the resources for obtaining the same punishment for the same defendant for the same spree of activity as had been possible before suppression of evidence. The stated and evident motive is punishment, not for appealing, but for the criminal acts—for which the state, if not the trier of fact, had significant proof.

We note that in Wisconsin, prosecutors are neither expected nor encouraged to pile up every possible accusation against a defendant. They are instead charged with evaluating both the defendant and the course of conduct with a view towards administering justice, constructing a conviction and possible sentence commensurate with the alleged criminal activity and the perpetrator. *See Karpinsky,* 92 Wis. 2d at 607–09, 285 N.W.2d at 734–35. In the present case, loss of evidence after appeal changed the equation. We think the prosecutor here made an adequate showing of his legitimate concerns regarding appropriate punishment sufficient to overcome the presumption of vindictiveness.[3]

---

[3] As stated in the facts, supra, pp. 201–02, defendant waived his preliminary hearing on the original two counts in exchange for the

## II. DENIAL OF RIGHT TO CALL WITNESSES

Defendant next asserts that he was denied his constitutional right to call witnesses on his own behalf when the court erroneously ruled that Steber had a constitutional privilege not to testify. We have scoured the record and can find no such ruling by the trial court.

The record reveals that defendant wanted Steber's direct testimony on certain matters but wanted to preclude cross-examination on others. The court ruled on this issue:

> [O]nce the witness took the witness stand and began to testify in regard to events that are all connected, even though they're separate charges, that she would be required to answer all questions and she could not in the middle of her testimony take the fifth amendment as to certain questions but not as to others.

Clearly, this is a ruling that if Steber were to testify, she could not assert her fifth amendment privilege in the middle of that testimony; it is a far cry from a ruling that Steber had a constitutional privilege not to testify at all.

Defendant did request a ruling from the court as to Steber's right to assert her constitutional privilege

prosecutor's agreement to forego the third charge. After we reversed defendant's convictions on the two charges, and after the state had added the third charge, defendant requested a preliminary hearing on all three counts. His motion was granted, and a preliminary hearing on all three counts was afforded him. Since defendant was returned to his prebargain position when the bargain was withdrawn, we find no fundamental unfairness in the proceedings. *State v. Beckes,* 100 Wis. 2d 1, 7, 300 N.W.2d 871, 874 (Ct.App. 1980).

not to incriminate herself by testifying. The court solicited argument on the issue from both prosecution and defense. The district attorney argued that Steber could not invoke the fifth amendment because she had been convicted by the State of Wisconsin for a crime arising out of the same series of events about which she would testify. Defendant argued that Steber had the right to invoke the fifth amendment, citing possible federal prosecution.

The court deferred ruling on this issue. Instead, it took up a related question, and again solicited argument, specifically asking: "What is your position in regard to that, *assuming,* Mr. [Prosecutor], the Court rules she is properly asserting her Fifth Amendment right?" (Emphasis added.) Discussion of the related issue continued, but a ruling on Steber's privilege not to testify was never forthcoming, because the defendant never made the decision to call Steber as a witness. The trial court's last words on the subject, prior to the close of evidence, were: "You can talk to Stacy Steber. First find out whether she's going to assert her Fifth Amendment privileges. And then I will have to make a ruling in regard to those matters that have been brought up."

Defendant never called Steber and never got a ruling on her testimonial privilege. Therefore, the question of her privilege is now being presented for the first time on appeal. Generally, we do not review issues first raised on appeal. *State v. Washington,* 142 Wis. 2d 630, 635, 419 N.W.2d 275, 277 (Ct. App. 1987). We decline to do so here.

Even if the trial court had ruled that Steber had a testimonial privilege, defendant would be estopped from claiming error. Before the trial court, defendant argued the existence of a privilege. On appeal, he

adopts the state trial attorney's position in opposition. This presents a classic case of judicial estoppel. *Id.*

## III. CLAIM OF IMPROPER AND PREJUDICIAL CROSS-EXAMINATION USING SUPPRESSED EVIDENCE

The prosecutor admittedly cross-examined defense witness Brian Mink—Edwardsen's nephew and former housemate—using information from statements previously suppressed by this court in *Edwardsen I.* Specifically, he asked Mink if the defendant was going to see R.V., a drug dealer. A contemporaneous objection was made and sustained; Mink did not answer the question and no further related questions were asked. We find no reversible error in this exchange.

Generally, an improper but unanswered question is not sufficient error to require reversal on appeal. *Genova v. State,* 91 Wis. 2d 595, 621, 283 N.W.2d 483, 495 (Ct. App. 1979). Where the trial court gives a curative instruction, we may conclude—as did the trial court here—that any possible prejudice has been erased. *Id.* at 622, 282 N.W.2d at 495.

In the instant case, the court sustained defendant's objection to the question. It had earlier instructed the jury to draw no inferences from sustained objections. In its charge to the jury, the court directed the panel to disregard any unanswered questions. We presume that a jury acts in accord with a properly given admonitory instruction. *State v. Pitsch,* 124 Wis. 2d 628, 645 n.8, 369 N.W.2d 711, 720 (1985).

Defendant also alleges the commission of prejudicial error when the state asked Mink: "[d]id [defendant] ever tell you that he was going to compress cocaine into chunks at any time?" Defendant argues that this question too had its source in the suppressed evidence and therefore should not have been asked.

We do not think that this question by the prosecutor warrants a reversal on appeal. First, we note that defendant did not raise a contemporaneous objection to the question. Instead, the question was asked and answered, and the witness was dismissed. The objection was not voiced until after all of the evidence was in. Failure to make a timely objection to the admissibility of evidence waives the objection, and even an error based on an alleged constitutional right may so be waived. *State v. Damon,* 140 Wis. 2d 297, 300, 409 N.W.2d 444, 446 (Ct. App. 1987).

Second, the record does not support defendant's position that the question was derived from the suppressed statements. After the close of the evidence, defendant moved for a mistrial based on the prosecutor's "drug dealer" question, discussed supra. The prosecutor admitted that this information was derived from the suppressed evidence. After the mistrial was denied, defendant moved for a mistrial based on the "compressing cocaine" question. The prosecution did not admit, however, the derivation of the question and the defendant made no alternative showing.

"It goes without saying that an adequate record is necessary for review of the issues raised on appeal." *State v. Perry,* 128 Wis. 2d 297, 300, 381 N.W.2d 609, 610–11 (Ct. App. 1985), *aff'd,* 136 Wis. 2d 92, 401 N.W.2d 748 (1987). We are constrained by the record; factual matters asserted in argument but not appear-

211

ing in the record cannot be considered. *Sedlet Plumbing & Heating v. Village Court, Ltd.*, 61 Wis. 2d 479, 483, 212 N.W.2d 681, 683 (1973).

Third, two ounces of cocaine were found under Edwardsen's seat pursuant to a lawful search of Steber's car. Constable Haas testified that the cocaine found was a chunky substance. There exists a legitimate basis for exploring with defense witnesses' questions regarding Edwardsen's experiences with chunky cocaine. This basis is unconnected to the confession; it is information from a search that took place independent of the confession. No doctrine bars the prosecution from using evidence obtained during the course of a lawful search. *See Muetze v. State*, 73 Wis. 2d 117, 130, 243 N.W.2d 393, 399 (1976).[4]

## IV. PROSECUTOR'S COMMENTS ON DEFENDANT'S FAILURE TO TESTIFY

Finally, Edwardsen complains that his constitutional right to remain silent was violated by the prosecution's commenting on defendant's failure to testify during closing argument. We find no constitutional violation.

Edwardsen, not standby counsel, made the closing argument for the defense. Edwardsen told the jury: "I didn't testify because he [Constable Haas] testified for me. He's lying from A to Z." In his rebuttal argument, the prosecutor said:

> [Edwardsen] indicated at one point that he didn't have to testify because—I believe he said Officer Haas testified for him. Perhaps, ladies and gentlemen, that was not the only reason Mr. Edwardson [sic] did not testify. As I indicated to

[4]If "compressing cocaine into chunks" has some technical meaning, that meaning is not in evidence here.

> you before, when a person testifies, both sides are then entitled to ask questions of the individual. Perhaps Mr. Edwardson [sic] did not want me to ask him any questions. Perhaps because he was afraid of the answers which he would be required to give.

Standby counsel objected, but was overruled. The prosecution made no further arguments in this vein. 

Generally, a defendant's right not to testify cannot be eviscerated by a prosecutor's comment on his silence. *Griffin v. California,* 380 U.S. 609, 614 (1965). However, the rule barring such comment is not absolute. The United States Supreme Court has held that when defendant's counsel focuses attention on defendant's silence, some prosecutorial reflection on that silence does not violate constitutional prohibitions. *Lockett v. Ohio,* 438 U.S. 586, 595 (1978). Following *Lockett,* the federal court of appeals for the Third Circuit held that where a defendant does not take the stand, but makes a closing argument that encompasses an unsworn statement of factual reasons for not testifying, the prosecution does not violate the defendant's constitutional rights by responding to the defendant's words. *Bontempo v. Fenton,* 692 F.2d 954, 958–59 (3d Cir. 1982).

In *Bontempo,* as in the instant case, defendant did not take the stand. In *Bontempo,* as in the instant case, defendant made a closing argument to the jury. In both cases, defendant gave a factual reason for not testifying: Bontempo asserted that his memory was impaired as a result of brain damage, *id.* at 957; Edwardsen asserted that Constable Haas testified for defendant and lied from A to Z. In both cases, the prosecution then suggested another reason for defen-

dant not testifying: that the defendant had thereby avoided answering or discussing questions pertinent to the case. The *Bontempo* court concluded that the prosecution had not violated fifth amendment constraints:

> Even if the prosecutor's remarks did constitute comment on the failure to take the stand, they did not amount to a constitutional violation. As the district court found, Bontempo "stridently directed the jury's attention to his own failure to testify." He even offered an unsworn excuse. At that point, the issue was in the jury box, if it had not been there before. Jurors, after all, cannot help remembering that the defendant did not testify. To say that the prosecution violated Bontempo's rights by calling the jury's attention to something he had already argued is to retreat from reality. Bontempo had made the point himself. If it was prejudicial, additional prosecutorial comment did not make it more so. Indeed, Bontempo's explanation for his failure to testify, untested by cross-examination, was probably more helpful to his cause then ignoring the matter altogether.

*Id.* at 959.

We fully concur. When a defendant, pro se, comments on his own silence and gives factual reasons for that silence, he cannot be heard to complain when the prosecution presents other explanations to the jury. At such a juncture, defendant himself has called attention to his silence, and the prosecution is doing no more than commenting on the unsworn testimony, and not on the defendant's right to silence.[5]

---

[5]A different issue is presented, of course, if a pro se defendant naively informs the jury of specific legal reasons for not testifying,

Defendant misplaces reliance on our holding in *State v. Johnson,* 121 Wis. 2d 237, 358 N.W.2d 824 (Ct. App. 1984). In that case, as here, defendant did not testify but did argue to the jury. The prosecution, in his opening statement, reminded the jury that only testimony under oath constitutes evidence, a statement "in precise keeping with the thrust of the standard instruction concerning arguments of counsel." *Id.* at 247–48, 358 N.W.2d at 829. We held that such a comment was permissible, and stated that it did not cross over into the forbidden area of comment on an accused's failure to testify. *Id.* at 248–49, 358 N.W.2d at 829. We then noted the impossibility of drawing a bright line for all cases between permissible and impermissible comment and concluded that determinations of whether a prosecutorial comment violates constitutional rights must be made case by case. *Id.* at 249, 358 N.W.2d at 830.

In the instant case, the prosecution's comment constituted no more than a pertinent and measured reply to defendant's calling attention to his own failure to testify. As such, the comment did not violate constitutional prohibitions safeguarding defendant's right to remain silent.

*By the Court.*—Judgment affirmed.

or of legal principles that should guide their understanding of the trial. *See, e.g., Elizondo v. State,* 545 S.W.2d 453, 455 (Tex. Crim. App. 1976) (holding that a defendant's statement that the jury is the judge of witness credibility does not open the door to otherwise forbidden prosecutorial comment).